# AFFIDAVIT

I, Alison Yates, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, do hereby depose and state as follows:

1. I am an "investigative or law enforcement officer" within the meaning of Title 21, United States Code, Section 878; Title 18, United States Code, Section 2510(7); and Fed. R. Crim. P. 41(a)(2)(c). Furthermore, I am authorized by law to conduct investigations and make arrests for offenses in Titles 18 and 21 of the United States Code.

## PURPOSE OF THIS AFFIDAVIT

2. This affidavit is submitted in support of search warrants for the following "Target Locations," associated with Jeffrey J. SADLER and Kira L. SADLER further described in the respective Attachment A for each individual target location:

    a. Property located at 51 Morning Sun Drive, Leadville, Colorado

    b. Property located at 1892 Four Seasons Boulevard, Leadville, Colorado

    In order to secure evidence in violation of the following statutes:

    a. Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vii), Manufacture, Possession with Intent to Distribute, and Distribution of a Controlled Substance, to wit: marijuana and marijuana cultivation, 100 or more plants;

    b. Title 21, United States Code, Section 846, Conspiracy to Manufacture, to Possess with Intent to Distribute, and to Distribute a Controlled Substance, to wit: marijuana and marijuana cultivation, 100 or more plants, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vii);

## BACKGROUND OF AFFIANT

3. I have been employed as a Special Agent with the DEA, United States Department of Justice, since March 01, 2003. In connection with my official duties, I investigate criminal and civil violations of the Controlled Substances Act. During my time with the DEA, I have participated in numerous drug trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21 of the United States Code. I have been involved in various types of electronic surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking.

4. Based on my training and experience, and further based upon discussions with fellow law enforcement agents with personal experience in the areas of drug enforcement, I am aware that it is common for drug traffickers to:

   a. maintain controlled substances within their residences and other buildings on their property, for control and easy access for distribution;

   b. keep books, records, receipts, notes, ledgers, airline tickets, bank records, money orders, and other papers relating to the manufacture, importation, transportation, and distribution of illegal controlled substances. These individuals commonly front (provide on consignment) illegal controlled substances to their clients and thus keep some type of records concerning monies owed. The aforementioned books, records, receipts, notes, ledgers, airline tickets, bank records, money orders, etc., are maintained where the narcotics trafficker has ready access to them such as his/her person, his/her residences and offices, in his/her motor vehicles or place of operation, or in storage facilities;

   c. secrete contraband, precursor chemicals and glassware, proceeds of drug sales, and records of illicit drug transactions in secure locations within their residences, businesses, properties, automobiles, and within rented storage units for ready access and to conceal same from law enforcement authorities;

   d. conceal in residences, businesses, properties, automobiles, and within rented storage units, caches of drugs, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in illicit drug trafficking activities;

   e. keep books, papers, and electronic devices (computers, electronic Rolodexes, caller ID devices, pagers, and cellular telephones) which reflect names, addresses and/or telephone numbers of their clients and associates in the illicit drug trafficking organization;

   f. photograph themselves, their associates, their property, and their operations and the controlled substances, and that these traffickers usually keep these photographs in their possession;

   g. keep paraphernalia for manufacturing, importing, packaging, weighing, and distributing narcotics that include, but are not limited to, glassware, precursor chemicals, scales, plastic bags, and other packaging materials;

   h. utilize telephones, cellular telephones, digital pagers, utilities, automobiles, motel rooms, apartments, houses, and storage units which have been obtained by third parties (straw purchasers) or obtained in false names to hinder law enforcement investigations and to avoid seizure laws;

    i. keep handguns, assault rifles, ammunition, and other weapons in their residences, businesses, automobiles, and storage units to safeguard supplies of drugs and the fruits of narcotics dealings;

    j. maintain various types of records, to include books, receipts, bank records, computers with accounting software or data, drug ledgers, and other items that document drug trafficking transactions and money laundering;

    k. keep large amounts of U.S. Currency, both to store the proceeds of illegal drug trafficking, and to maintain and finance their ongoing drug trafficking and money laundering activities; and

    l. attempt to legitimize these profits through foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

5. I have personally participated in the investigation, which is described in more detail below. My familiarity with the investigation is also based on conversations with other law enforcement personnel and my review of reports and documents provided to me by other law enforcement personnel. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. Furthermore, unless otherwise noted, the conversations and documents in this Affidavit are set forth in sum and substance only. Because the purpose of this affidavit is limited to setting forth probable cause to search the Target Locations, I have not set forth all of the facts of which I am aware concerning this investigation.

## FACTS AND BACKGROUND OF THE INVESTIGATION

6. On Thursday March 01, 2018, an Omaha, Nebraska police officer conducted a traffic stop on a gray 2018 Audi A5 bearing Illinois license plate AE71225 traveling westbound on Interstate 80 near mile marker 435 (Registered Owner: Jeffrey SADLER, 2700 25th Avenue, Moline, IL) for a traffic offense. At that time, the officer identified the occupants of the vehicle as Jeffrey SADLER (driver) and Kira SADLER (passenger) through their Colorado driver licenses. During the traffic stop, Jeffrey SADLER told the police officer that they (Jeffrey and Kira) reside in Leadville, Colorado and spend time in Illinois. Jeffrey SADLER stated that they (Jeffrey and Kira) traveled to Moline, Illinois from Leadville, Colorado to visit his mother who was sick with a cold. Jeffrey SADLER stated that while in Moline, Illinois they (Jeffrey and Kira) stayed with his mother at her residence. Jeffrey SADLER told the Officer that they had left their residence in Leadville, Colorado on Sunday (February 25, 2018) and that the trip from Leadville to Moline, Illinois is a 14 hour trip and they (Jeffrey and Kira) did not travel anywhere else. Moments later, Officers spoke with Kira SADLER who stated that they were traveling back to Colorado from their residence in Moline, Illinois and that they had stayed there

approximately two (2) weeks. Kira SADLER also told Officers that they (Jeffrey and Kira) had traveled to Chicago, Illinois and stayed for a couple of days during their trip. Moments later, Officers asked Jeffrey SADLER when was the last time he traveled to Chicago and Jeffrey SADLER responded, "Recently enough". The Officer again asked Jeffrey SADLER about his last trip to Chicago and Jeffrey SADLER answered, "Recently". An additional attempt was made to ask Jeffrey SADLER about his last trip to Chicago and Jeffrey SADLER stated, "I'm assuming my wife told you we went to Chicago?" Jeffrey SADLER went on to state, "I'm just trying to make it simple because my registration says I'm from Illinois". At that time, Jeffrey SADLER was issued a warning citation for the traffic violation and was given his paperwork and driver license back. Jeffrey SADLER then asked the officer, "What's the problem?" At that time, the Officer asked Jeffrey SADLER if there was anything illegal inside the vehicle to include drugs, weapons or large amounts of U.S. Currency. SADLER denied having anything illegal inside the vehicle.

7. Officers then asked for consent to search the vehicle and Jeffrey SADLER denied consent. Officers then asked Jeffrey SADLER if he would consent to a K-9 sniff of his vehicle to which he agreed. Moments later, a K-9 was deployed to conduct a free air sniff of the vehicle. The K-9 alerted and indicated to the presence of the odor of narcotics coming from the vehicle. A search of the vehicle revealed a purple suitcase with Jeffrey SADLER's name on it within the trunk of the vehicle. Upon opening the suitcase, Officers observed 3 empty duffel bags and an additional duffel bag containing US Currency in heat sealed packaging. Officers could smell the odor of raw marijuana emitting from the suitcase and duffel bags. Upon locating the US Currency in the heat-sealed packaging, Officers noted that there were five (5) separate heat-sealed packages in the one duffel bag and each package had a green marked number (10, 5, 8, 8, 8) and on one of the packages, the number 41 was written in ink. At that time, Officers approached Jeffrey SADLER and asked him about the US Currency that was located. SADLER stated that it was $40,000 and when Officers asked SADLER why he did not tell law enforcement about the US Currency he stated that it was "no big money" and that it was "none of your business". A further search of the vehicle resulted in an additional amount of US Currency located within a purple purse belonging to Kira SADLER. Kira SADLER stated that she did not know how much money was in her purse and that she did not want to further discuss it. Officers also located a suspected drug ledger notebook inside of Kira SADLER's purple purse. Numerous gas receipts were located throughout the vehicle along with a Way to Grow, Silverthorne, CO receipt dated February 21, 2018. Additionally, two (2) cellular telephones were located in the center console of the vehicle.
8. Moments later, DEA Agents responded to the investigation. At that time, Agents read Jeffrey SADLER his Miranda Warnings and SADLER verbally waived his Miranda Rights and also signed a DEA 13 form (Advice of Rights Form) waiving his Miranda

Rights. Jeffrey SADLER told DEA Agents that he and his wife, Kira SADLER, were traveling back to their home in Leadville, Colorado from their home in Moline, Illinois. When Agents asked about the US Currency located in the vehicle, Jeffrey SADLER stated that it was approximately $41,000.00 and that the reason it was packaged in heat sealed packaging was to prevent moisture damage. Jeffrey SADLER stated that the duffel bags located within the suitcase were for dirty laundry. Agents then asked SADLER about his income, to which SADLER stated that he buys homes and remodels them and he either sells the homes or rents them. SADLER also told Agents that during the summer time, he looks for remodeling jobs in Illinois. Jeffrey SADLER told Agents that the Audi A5 that he and his wife, Kira SADLER, were stopped in was purchased in December 2017 and that he used his checking account to pay the down payment. DEA Agents then asked SADLER about the purported drug ledger located in Kira SADLER's purse to which Jeffrey SADLER claimed zero knowledge of and stated that he did not know what the numbers meant when Agents showed it to him. Agents then asked SADLER about a receipt from a marijuana grow shop located inside his vehicle and SADLER stated that it was a receipt for nutrients and that SADLER has a lot of legal marijuana plants inside his residence. Agents then attempted to ask Kira SADLER questions but Kira SADLER declined to answer questions and stated that Agents should ask her husband questions about the US Currency located because it belonged to her husband, Jeffrey SADLER. DEA Agents then downloaded Jeffrey and Kira SADLER's cellular telephones. During a review of the information obtained from their cellular telephones, Agents observed numerous photographs of a large scale indoor marijuana grow with marijuana plants in various growth stages, daily checklists for an indoor cultivation and watering schedules for an indoor cultivation. At that time, law enforcement seized the US Currency and Jeffrey and Kira SADLER were subsequently released along with their vehicle (Audi A5).

9. On April 05, 2018, Your Affiant served an administrative subpoena to Continental Audi of Naperville regarding the purchase of the Audi A5 that Jeffrey and Kira SADLER were driving on March 01, 2018 when a large amount of US Currency was seized from the trunk of the vehicle. On April 12, 2018, Your Affiant was advised by Continental Audi of Naperville that on December 22, 2017, Jeffrey SADLER purchased the Audi A5 for $58,374.20 in which he paid $9,000.00 in US Currency, $2,800.00 in a cashier's check from Chase Bank and a personal check in the amount of $46,574.20 from Pueblo Bank and Trust.

10. On May 23, 2018, Your Affiant was notified by the Department of Labor and Employment that no earnings and wages had been reported since the 4th quarter of 2010 for Kira SADLER and no earnings and wages had been reported for Jeffrey SADLER. A database search of Lake County tax assessor records indicated that Jeffrey and Kira SADLER has listed addresses of 1892 Four Seasons Blvd, Leadville, Colorado and 51 Morning Sun Drive, Leadville, Colorado.

11. A return of administrative subpoenas to Xcel Energy indicated that both residences, 1892 Four Seasons Blvd. and 51 Morning Sun is serviced to Jeff J. SADLER since August 05, 1999 to present. A review of records from Xcel Energy indicated that in the year 2017, 1892 Four Seasons Blvd utilized a monthly average of 10,539 kilowatt hours with the least kilowatt hours documented at 4,562 the month of September and the most kilowatt hours utilized as 13,231 in month of December. Xcel Energy indicated that 1892 Four Seasons Blvd utilized a monthly average of 11,575 kilowatt hours from January 2018 to present, with the least kilowatt hours documented at 9,501 in month of April and 13,052 kilowatt hours in month of February as the most. Xcel Energy also indicated that in the year 2017, 51 Morning Sun Drive utilized a monthly average of 9,699 kilowatt hours with the most kilowatt hours document as 11,915 in month of January and the least kilowatt hours documented at 6,660 in month of November. From January 01, 2018 to present, Xcel Energy indicated that 51 Morning Sun Drive utilized a monthly average of 10,570 kilowatt hours, with the most kilowatt hours documented at 13,000 in month of January and the least kilowatt hours documented at 8,931 in month of February. According to Electricity Local database, the average residential electricity consumption in Colorado is 706 kilowatt hours per month.
12. A search of Colorado's Department of Revenue Marijuana licensing database was conducted on Jeffrey SADLER and Kira SADLER with negative results.
13. Your Affiant believes based upon the large sum of US Currency seized by law enforcement, Jeffrey SADLER's admission that he has marijuana plants in his residence, the on-going and consistent excessive electrical usage that is consistent with an illegal marijuana grow operation, the SADLER's (Jeffrey and Kira) non-existent documented financial income, I believe the SADLER's (Jeffrey and Kira) are operating a marijuana grow at 51 Morning Sun Drive and 1892 Four Seasons Boulevard, Leadville, Colorado.
14. I believe records relating to the cultivation and distribution will be stored at this location, as well as cellular telephones and computers utilized by SADLER's (Jeffrey and Kira) in furtherance of their criminal activities.

## CONCLUSION

15. I respectfully assert there is probable cause to believe that the properties owned by the SADLER's (Jeffrey and Kira) will continue to be utilized in furtherance of a conspiracy to distribute illegally grown marijuana in the Western Slope of Colorado as well as to contribute to the operation of the illegally grown marijuana. All are described fully in Attachment A. Based on my training and experience, and my investigation to this point, it is likely that SADLER's (Jeffrey and Kira) will keep documentation of drug transactions and the associated criminal activity inside these two (2) residences. Therefore, I believe that it is probable that documents, electronic devices, drug proceeds, and ledgers consistent with what is described herein and Attachment B, will also be located at his residence.

16. Based on the foregoing, there is probable cause to believe that the execution of a search warrant on the properties will lead to the location of illegally obtained assets and will allow law enforcement personnel to gather additional evidence of violations of the Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(vii) and Section 846.

I, Alison Yates, a DEA Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

                                            Respectfully submitted,

                                            *s/ Alison M. Yates*
                                            Alison M. Yates
                                            Special Agent
                                            Drug Enforcement Administration

Submitted, attested to, and acknowledged by reliable electronic means on June  20 , 2018.

_____
Gordon P. Gallagher
UNITED STATES MAGISTRATE JUDGE

Affidavit was reviewed and submitted by AUSA Pete Hautzinger on June 20, 2018.

## ATTACHMENT A PROPERTY TO BE SEARCHED

51 Morning Sun, Leadville, Colorado and is located off of US-24. The legal description is described as Lot 54 Sylvan Lakes Subdivision Filing Number 4. To include any garages, outbuilding and vehicles located on the property.

Below are photographs of 51 Morning Sun, Leadville, Colorado that were taken during surveillance:



# ATTACHMENT B

The Court, finding reasonable necessity for seizure pursuant to a search warrant, authorizes the seizure of the following items:

1. Controlled substances including, but not limited to, methamphetamine, cocaine, marijuana, and heroin.

2. Any vessels or other implements used in connection with the production, packaging, weighing, storage, transport, or distribution of such controlled substances.

3. Any substance used to mix into controlled substances in order to create a larger volume. Such substances are commonly referred to as "cut."

4. Books, records, receipts, notes, ledgers and other papers relating to the production, transportation, ordering, purchase, or distribution of controlled substances.

5. Books, records, invoices, receipts, records of real estate transactions, bank statements, and related records, certificates of deposits, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, correspondence, safe deposit keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.

6. Cellular telephone(s) and/or portable telephones, pagers, computers, other electronic devices and any stored electronic communications contained therein.

7. Address and/or telephone books (written or typed as opposed to printed commercially), indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

8. United States currency, precious metals, jewelry and financial instruments, including mortgage notes, stocks, and/or bonds representing drug proceeds.

9. Photographs and digital images, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular, photographs of co-conspirators, of assets and/or controlled substances.

10. Documents or other articles of personal property tending to indicate the ownership of and/or control over the target locations including, but not limited to, purchase or lease agreements, keys, and mail envelopes.

11. Weapons, firearms, and items used in conjunction with weapons or firearms, including magazines, ammunition and means of carrying or concealment, and records or receipts pertaining to weapons, firearms and ammunition.